| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>CAROLYN MARIE JONES | DOCKET NO. |
| | MAGISTRATE'S CASE NO.<br>M 14 01326 |

Complaint for violation of Title 18, United States Section Code 1343

| NAME OF MAGISTRATE JUDGE<br>HONORABLE SUZANNE H. SEGAL | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|
| DATE OF OFFENSE<br>December 9, 2013 | PLACE OF OFFENSE<br>Los Angeles County & Riverside County | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

    Beginning on a date unknown in or before November, 2013, and continuing through and including at least March, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant Carolyn Marie Jones ("defendant") knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from them by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

    On or about December 9, 2013, within the Central District of California, defendant, for the purpose of executing a scheme to defraud, caused a wiring of $7,500 on or about December 9, 2014, from M.J. in Atlanta, Georgia, to the Central District of California in violation of 18 United States Code § 1343.

FILED
CLERK, U.S. DISTRICT COURT
JUN 30 2014
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED: (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>ROBERT HAACK /S/<br>OFFICIAL TITLE<br>Special Agent – Internal Revenue Service |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br>/s/ Suzanne H. Segal | DATE<br>June 30, 2014 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

AUSA Ruth C. Pinkel (213) 894-6077     REC: Detention

## AFFIDAVIT

I, Robert Haack, being duly sworn, declare and state as follows:

### I. INTRODUCTION

1. I am a Special Agent of the Internal Revenue Service, Criminal Investigation ("IRS-CI") division and have served in this capacity since February 2011. I am currently assigned to the Los Angeles Field Office. As an Internal Revenue Service ("IRS") Special Agent, my duties include investigation of criminal violations of the Internal Revenue Laws (Title 26, United States Code), Bank Secrecy Act Laws (Title 31, United States Code), Money Laundering Control Act Laws (Title 18, United States Code, Sections 1956 and 1957), and related offenses.

2. My professional and academic training includes approximately six months of training at the Federal Law Enforcement Training Center ("FLETC") in Glynco, GA. This training included criminal investigative training with courses in law enforcement techniques, federal criminal statutes, conducting criminal investigations, and the execution of search warrants. This training also included instruction in the law of search and seizure under the Fourth Amendment of the United States. In addition to the criminal investigative training, I completed a Special Agent Basic Training course, which included courses in financial investigative techniques, legal principles, and statutes representing criminal violations of the United States Code as enumerated in Titles 18, 26, and 31. In addition, I received a Bachelor's of Accountancy in 2001 from New Mexico State University, a Masters of Accountancy in 2003 from the University of Texas at El

Paso, and a Masters of Business Administration in 2009 from the Weatherhead School of Management at Case Western Reserve University.

## II. PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of an application for a complaint and arrest warrant charging Carolyn Marie Jones with wire fraud in violation of Title 18, United States Code, Section 1343.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including United States Secret Service ("USSS") Special Agent Joseph Berrios, with whom I am working on this investigation.[1] This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

5. This investigation involves allegations that Carolyn Marie Jones ("Jones" or "Carolyn Jones") engaged in a scheme to defraud investors, from the fall of 2013 through at least February, 2014, whom Jones led to believe were investing in some

---

[1] I am in regular contact with SA Berrios. He has communicated to me all facts and information that are attributed to him in this affidavit.

2

type of securities deal or in a clothing business. Two men from Atlanta, Georgia, contacted the U.S. Attorney's Office in late March 2014 to report that they had been defrauded out of approximately $23,000 by Jones and others. A financial analysis has determined that the majority of the funds "invested" by the two victims was spent by Jones on personal expenses. In addition, financial analysis has determined that Jones, who is supposed to be employed as a clothing designer by a company called Branded By Faith, Inc., has received incoming wire transfers from other individuals, totaling approximately $80,000 between November 2013 and March 2014. Jones is pending trial in another case in this district and as part of her conditions of release, set in October 2013, is prohibited from soliciting investor funds.

## IV. STATEMENT OF PROBABLE CAUSE

### A. Prior Indictment of Carolyn Marie Jones

6. On September 25, 2013, Jones was indicted for bank fraud (18 U.S.C. § 1344), false statement on a loan application (18 U.S.C. § 1014), aggravated identity theft (18 U.S.C. § 1028A), and concealment of assets in bankruptcy (18 U.S.C. § 152(1)) in the case entitled United States v. Carolyn Marie Jones, CR 13-698-MWF. The indictment alleges that Jones, while operating a clothing company called Diamond Decisions, Inc., dba Privacywear ("DDI"), engaged in a scheme to defraud Union Bank out of approximately $15 million and includes allegations that Jones created false and fraudulent documents that were submitted in support of the loan application to include:

    a.    False personal federal tax returns that were not filed with the IRS and that listed a social security account number which did not belong to Jones;

    b.    False and fraudulent financial statements showing fabricated sales, account receivables, and inventory reports related to DDI - a business that Jones both operated and controlled;

    c.    False and fraudulent financial statements for DDI which were purportedly audited by "Sterling Business Advisors, LLC"; and

    d.    False personal financial statements that contained a false social security number for Jones and that falsely declared that Jones had never filed for bankruptcy[2] and had no prior felony convictions.[3]

7.    The indictment also alleges that Jones caused DDI to file a Chapter 11 bankruptcy on or about February 12, 2010, in the case entitled <u>In Re Diamond Decisions, Inc.</u> 2:10-BK-1509-RN. Union Bank, with the $15 million debt owed to it, was listed as the sole creditor on the bankruptcy petition. The indictment alleges that Jones thereafter concealed assets from the bankruptcy trustee in violation of 18 U.S.C. § 152(1).

---

[2] On or about November 1995, Jones filed for chapter 13 bankruptcy.

[3] In January 2004, Jones pled guilty to and was sentenced for a violation of California Penal Code Section 487(a) (Grand Theft).

### B. Jones' Approved Employment As an Apparel Designer

8. According to the conditions of her release in CR 13-698, Jones' employment must be approved by Pre-trial Services. I have reviewed a declaration of Tim Anderson ("Anderson") dated April 17, 2014, filed by Jones' counsel on April 24, 2014, in CR 13-698-MWF. Anderson described himself as the founder and chief executive officer of "Branded by Faith, Inc." Anderson stated the following:

   a. Anderson has employed Carolyn Jones since November 2013. Jones is employed as the lead apparel designer for Anderson's Company Branded by Faith, Inc.

### C. Background of Current Investigation

9. In or about late March 2014, Special Agents from the IRS-CI received information that between November 2013 through at least February 2014, Carolyn Jones had defrauded two investors, M.J.[4] and R.M., who live in Georgia, out of approximately $23,625. The two men called the United State's Attorney's Office in Los Angeles to report that they had been defrauded by Jones. I have read interview reports of M.J. and R.M. that were prepared by another IRS-CI Special Agent. Based upon my review of the interview reports and my review of documents provided by M.J. and R.M., I have learned the information set forth below.

---

[4] M.J. told the government that he was convicted on a federal bank fraud charge. According to a public records search, this conviction was in approximately 2002.

### D. Statements of Victim M.J. - December 2013 Wiring

10. M.J. stated that he heard of an opportunity to invest in a project with Jones and that the deal involved some securities and millions of dollars. M.J. believed that his funds invested in the project were going to be used in part to get this project going. On or about December 2013, an agreement was signed for this investment opportunity between himself, Jones, and an associate of Jones, Craig Bishop. Jones and Bishop were raising money for Privacy Wear. Based upon the agreement, M.J. sent $7,500 around December 2013, from his Wells Fargo Bank business account located in Atlanta, Georgia, to a Citibank account ending in 1059 located in the Central District of California. I have reviewed records for this Citibank account which show that it is titled under the business name "Premier Management Group" and Jones is listed as "Pres" on the account application under the section for "Business Title." Jones' name and signature appear on the signature card for this account.

11. M.J. also sent an additional $7,500 from his business Wells Fargo Bank account to a Wells Fargo Bank account ending in 7750. M.J. was instructed to wire the money into this account and was told that the 7750 account belonged to Jones' associate. I have reviewed Wells Fargo records which indicate that account 7750 is under the name "Rhonda Kilpatrick." Based upon information provided by SA Berrios, I know that Rhonda Kilpatrick is a friend of Jones and was present at the residence of Jones on or around October 4, 2013, during the arrest of Jones. SA Berrios also told me that he saw Rhonda Kilpatrick at Carolyn Jones' initial

6

appearance before Magistrate Judge Segal on or around Monday, October 7, 2013. Furthermore, Rhonda Kilpatrick was a co-signor on the Union Bank Corporate Loan which forms the basis for the bank fraud alleged in the indictment in CR 13-698-MWF.

12. Jones told M.J. to send the money to Rhonda Kilpatrick, whom Jones described as her last partner involved with raising the new capital. The money was transmitted in this manner because both M.J. and Rhonda Kilpatrick had bank accounts located at Wells Fargo Bank which would allow the transferred funds to be immediately available to Jones. M.J. was told that Jones needed the money that day to fly to Miami in order to "close the deal." After the fund transfers, Jones told M.J. over the phone that she had received the $7,500 in funds transferred via the Wells Fargo Rhonda Kilpatrick account. Jones also confirmed that she received the bank wire transfer to the Premier Management Group account at Citibank.

13. M.J. was told that the money was needed to pay Securities and Exchange Commission fees, closing fees, escrow fees of $1,800, and travel expenses to Miami. M.J. was told by Jones that the purpose for some of the money was to pay for Jones's travel expenses so that Jones could sign some documents in Miami and secure the transactions. The deal allegedly also had seven investors from New York and that the deal involved about $7.2 million that was raised in two groups of about $3.0 million.

14. Jones told M.J. that she was going to be flying out of Los Angeles, California on December 9, 2013, at 8 or 9 p.m. and would arrive in Miami around 2 to 3 a.m. Jones told M.J. that she

was going to land, rent a car, check into a hotel and then go to the meeting. Jones represented to M.J. that she was in fact in Miami for about 10 days, from December 10, 2013, until December 19, 2013.[5]

15. Jones represented to M.J. that she had a meeting the morning of December 10, 2013 around 9 a.m. in Miami. Jones told M.J. that there were delays in the transactions because eight investors needed an "insurance wrap."

16. M.J. spoke to Jones every day that she was allegedly in Miami. Jones refused to provide M.J. with the name of the hotel that she was staying at in Miami and would not provide M.J. with a Miami based telephone number.[6]

17. Jones told M.J. that she had to structure the deal through Craig Bishop's company because the Securities and Exchange Commission had Jones under a no-solicit money from outside investors order.[7] M.J.'s money that went into Bishop's company was going to flow into Jones's "Premier Management Group" to work around the restraint. The funds were going to be used to revive

---

[5] Special Agent Berrios told me that he was present in Magistrate Judge Segal's courtroom on December 10, 2013, during a bail review hearing for Jones and Jones was in court at that time attempting to get travel restrictions lifted.

[6] I have reviewed a court filing made by AUSA Ruth Pinkel on or about April 29, 2014, in which she stated that Pre-trial Services officer Pamela Pozo stated that as of April 28, 2014, Carolyn Jones had not requested permission to travel and had not traveled outside the Central District of California at all since the bond was modified in December 2013. Prior to December 2013, Jones was precluded by the conditions of her release from traveling outside of the Central District of California.

[7] Special Agent Berrios and I have reviewed Memos of Understanding between M.J. and Craig Bishop which purport Craig Bishop to be the principal of CKB Investments, Inc.

Privacy Wear through the company Premier Management Group. M.J. knew that despite what any agreement said between himself and Bishop, the money was actually going to Jones and not to Bishop. M.J. has two signed copies of "Memorandums of Understanding" listing Bishop as principal of "CKB Investments" and M.J. and signed by both Bishop and M.J.

18. On or about December 9, 2013, the day the funds were sent, Jones directed M.J. through the details of the wire transaction. M.J. did not talk to Bishop on December 9, 2013. M.J. believed the deal was related to Privacy Wear.

19. M.J. made the investment agreement with Jones before he knew that Jones had been indicted. Later, after learning about the indictment, M.J. confronted Carolyn Jones about the indictment after he had made the investments and "warned her to be truthful." Jones told M.J. that she was not indicted and that person listed in the document was not her. Jones represented to M.J. that the "deal was going to close." Jones would not provide M.J. with information regarding the deal. Jones told M.J. the name of the escrow agent was "Allison" but refused to provide the business name of the escrow company. Jones refused to provide specifics of the transaction to M.J. because Jones claimed that the agreement had a strict "Non-Disclosure Agreement."

20. M.J. reviewed the conditions of Jones's bond agreement and indicated that she should not have traveled to Miami based upon the bond agreement. M.J. concluded that Jones was lying and did not actually make the trip to Miami and that she was "hustling" him in order to obtain money to make bond.

21.     On or around February 2013, M.J. learned that Jones had been indicted and spoke with Donald Deciccio, (Bishop's attorney) regarding Jones. Bishop told Deciccio of the indictment and told him that it related to Jones's failure to pay employee payroll taxes to the IRS. M.J. believed that Deciccio was involved in the deal with Jones since approximately September 2013.

22.     M.J. provided copies of text exchanges between himself and Carolyn Jones, which I have reviewed, including the following:

a.   A January 16, 2014 text message from Carolyn Jones number (909)224-8554 which sets forth wiring instructions with a routing number of 322271724 and an account number ending in 2739. [I have confirmed that the routing number listed above is for Citibank in Southern California, including Los Angeles and San Diego. The account number is the same account number described below—the Citibank account in the names of Jones and Rhonda Kilpatrick. The phone number listed in the text messages is the same phone number that Jones listed as her phone number on her release order and bond forms filed in CR 13-698-MWF on October 7, 2013 and October 25, 2013.]

b.   In a text exchange on Thursday, January 23, 2014 at approximately 10:10 pm M.J. asked the following:

> Did you work your ticking (sic) out? What time are you leaving? Carolyn I hope we close tomorrow!!!!

c.   The response from Carolyn Jones was as follows:

> There is still one flight that I can possibly take tonight. It will be last flight out. We also have two of our key investors who are grounded in NY due to the

weather conditions, so depending on what happens with me & with them, then escrow make recommendations on possible closing via conf call. Please allow time for coordination in the morning . . .

### E.   Statements of Victim R.M.

23.   On or around September or October of 2013, R.M. heard of an investment opportunity from "James Brisco" that involved Craig Bishop. R.M. was told that a group was close to closing a transaction in Miami and that they were short some money. R.M. initially dealt with Bishop and did not know about Jones's involvement at least until four to six weeks into the investment deal. The investment opportunity was pitched to R.M. as a real estate transaction in Miami. The money was going to be used for closing costs. R.M.'s investment was supposed to be $10,000 that would earn a return of $100,000. The turn-around time of the deal was two business weeks and the deal had a strict non-disclosure agreement because it involved a "super-secret" project with celebrities.

24.   Jones was introduced to R.M. and the investment opportunity changed from a real-estate deal to a fashion business/event managing company. Jones was going to re-launch her fashion business "Privacy Wear." Subsequent to R.M. wiring the money, Jones informed R.M. that the company Privacy Wear had been sold.

25.   Bishop also used the name "Privacy Wear" when speaking to R.M. which R.M. researched and was able to see that celebrities were wearing the clothing. This had an impact on him

investing. R.M. also learned that Privacy Wear had gone bankrupt and Jones mentioned this to R.M. during their conversations.

26. R.M. was told that the new investment deal was going to be a mix of fashion and celebrity events. The name of it was going to be "Premier Management." The deal was in part negotiated with attorney Donald Deciccio. The deal was confirmed and then drafted into a document that was signed by Bishop and R.M.

27. R.M. retained memoranda of understanding with both Bishop and Jones's name on it pertaining to the investment deal.

28. In or about November 2013 through January 2014, R.M. wired approximately $8,625 in numerous amounts from his personal account at Wells Fargo Bank in Atlanta, Georgia, to a Citibank account ending in 2739 located in the Central District of California. According to records obtained from Citibank, account 2739 is a personal account with joint ownership for both Jones and Rhonda Kilpatrick. R.M. wired this money pursuant to his understanding that an investment opportunity existed with both Jones and Craig Bishop and the money would be used to further this investment opportunity.

## V. REVIEW OF FINANCIAL RECORDS

29. I have reviewed records from the following financial institutions, among others, Wells Fargo Bank, Citibank and Western Union. This review has revealed the following information:

A.  CITIBANK ACCOUNTS

1.  <u>Premier Management Group Citibank Account-December 9 Wire</u>

30.  Citibank produced records for a bank account with an account number ending in 1059. This is a business checking account in the name of "Premier Management Group." According to Citibank records, Jones is the primary account holder and is listed as "Pres" on the account application form. These bank records showed that, on or about December 9, 2013, an incoming wire transfer from M.J. wired out of an account located in Atlanta, Georgia, was received into this Citibank account located in the Central District of California in the amount of $7,500. Prior to this incoming $7,500 wire, the account balance was $9.40. On December 10, 2013, $2,000 is wired to CKB Investments and $4,500 is transferred to a personal checking account, described below, in the names of Jones and Rhonda Kilpatrick.

31.  Other notable transactions that occurred in this account in the relevant time period include the following:

   a.  A deposit dated November 5, 2013 in the amount of $4,900.

   b.  A withdrawal dated November 5, 2013 in the amount of $4,700.

   c.  An incoming wire transfer from T.K.[8] dated November 18, 2013, in the amount of $25,360 and subsequently on

---

[8] This is the same name that is listed in the information received from Western Union, described below.

13

that same date, transfer to checking account 2739[9] in the amount of $23,000.

    d.    An incoming wire transfer from J.D. dated March 14, 2014, in the amount of $16,000 and then on the same date, a transfer to checking account 2739 in the amount of $15,900.

    e.    An incoming wire transfer from J.D. dated March 19, 2014, in the amount of $18,500 and then on the same date, transfer to checking account 2739 in the amount of $13,000 and a withdrawal dated March 19, 2014, in the amount of $3,900.

    2.    <u>Carolyn Jones & Rhonda Kilpatrick Joint Account</u>

32.    Citibank produced records for a personal checking account with the corresponding account number ending in 2739. This account was opened in the name of Jones and Rhonda Kilpatrick on or about May 10, 2011. These bank records showed that this account received multiple incoming wire transfers from approximately November 2013 through January 2014 from R.M. which were deposited into the account. Based upon my analysis, R.M's funds appear to have been spent on personal expenses[10] such as restaurants, groceries, clothing, gasoline, and utilities.

33.    Other notable transactions that occurred in the account ending in 2739 include the following:

    a.    I have traced portions of M.J.'s money into this account, $4,500 described above, and it was spent on personal

---

[9] Citibank account ending in 2739 is a personal checking account for "Carolyn Marie Jones" and "Rhonda Kilpatrick".

[10] R.M. told me that he would not have invested with Carolyn Jones if he knew that she was going to spend the money on personal expenses.

expenses[11] such as restaurants, groceries, clothing, gasoline, and utilities.

  b. A teller deposit dated December 16, 2013, in the amount of $1,600. Based upon my review of Western Union records, I can see that on that same day, Jones received an incoming wire from T.K. also in the amount of $1,600.

  c. In addition, between approximately December 19, 2013 to January 15, 2014, there were approximately $13,825 in additional deposits through the teller.

  d. A teller cash withdrawal dated March 14, 2014, in the amount of $12,500.

  e. A teller cash withdrawal dated March 14, 2014, in the amount of $1,600.

  f. A transfer from checking account 1059 dated March 19, 2014, in the amount of $13,000.

  g. A check written to "Admiral Yacht Charters" dated December 29, 2013, in the amount of $3,500. The check memo states "Cam 21st B-day." I know from my investigation that Carolyn Jones has a daughter named Cameron.

  h. A check written to "The Severo Law Firm" dated March 17, 2014 in the amount of $12,500.

  B. **Wells Fargo Bank - Rhonda Kilpatrick Account**

  34. I have reviewed records for Wells Fargo Bank account ending in 7750. This personal checking account was opened in the

---

[11] M.J. told me that he would not have invested with Carolyn Jones if he knew that she was going to spend the money on personal expenses.

15

name of Rhonda Kilpatrick. These bank records show that, on or about December 9, 2013, an inter-bank transfer in the amount of $7,500 from M.J. – see above -- was deposited into this account.

35.   SA Berrios reviewed surveillance photos provided by Wells Fargo Bank and positively identified Rhonda Kilpatrick[12] in the photos at Wells Fargo Bank on December 9, 2013 withdrawing the $7,500 wired by M.J. On that day, prior to M.J.'s $7,500 wire, the account balance was $2.47. After Rhonda Kilpatrick withdrew the $7,500, the account balance was again $2.47.

   **C.   Western Union Records**

36.   Finally, SA Joseph Berrios received information from Western Union concerning attempted wire transfers from M.J. to Jones and other receipts of wire transfers by Jones. I have read the interview report and based upon my review of the interview report and my review of information provided by Western Union, I have learned the following:

   a.   Beginning on or around December 13, 2013 through January 13, 2014, approximately eleven wire transfers were sent from T.K. located in London, England, to Jones for the approximate total amount of over $20,000. Based upon the dollar amount of the transactions, Western Union believed that the amounts were being structured in order to avoid reporting requirements.

---

[12] SA Berrios has reviewed the California Driver License Photo of Rhonda Kilpatrick and identified her at both the arrest of Carolyn Jones on or around October 4, 2013 and also at Carolyn Jones's initial appearance before Magistrate Judge Segal on or around Monday, October 7, 2013.

b.   Prior to wiring money as summarized above, M.J.
attempted to wire approximately $7,500 to Jones through Western
Union.  The wire transfers from M.J. were subsequently
disallowed by Western Union resulting in M.J. using Citibank to
further wire the money to Jones.

            i.   Notable transactions include a transfer from
T.K. in the amount of $1,600 dated December 16, 2013. (As noted
above, there was a teller deposit into Citibank account 2739
dated December 16, 2013, in the amount of $1,600.)

## VI. Carolyn Jones's Prior Criminal Conviction for Grand Theft

       37.   I have reviewed records from Orange County Superior
Court which show that a criminal complaint for Carolyn Jones was
filed on June 13, 2002 and Carolyn Jones pled guilty on January 3,
2004 to Grand Theft in violation of California Penal Code 487(a).
On January 14, 2004, Jones was sentenced to 365 days in jail, 3
years' probation and ordered to pay $207,079.24 in restitution.  I
have reviewed records SA Berrios obtained from the Orange County
Probation Department, which contained police reports.  According
to those records, Jones was employed by a company called Lantronix
in the position of Vice-President of the Information Technology
Department.  In that capacity, Jones ordered over 70 laptop
computers over a few month period, valued at over $207,079.24 and
then stole the laptops.  When confronted by the Vice-President of
Lantronix, Jones falsely stated that the laptops had been ordered
for a Lantronix customer in Connecticut and claimed to have FedEx
receipts to prove it.  A subsequent investigation determined that

the customer had not ordered the laptops and that Jones herself had driven to a vendor, on multiple occasions, and had placed the laptops in her car.

## VII. CONDITIONS OF JONES' PRE-TRIAL RELEASE IN U.S. V. CAROLYN MARIE JONES, CR 13-698-MWF

38. On or about Friday October 4, 2013, SA Berrios participated in the arrest of Jones and was present in court during her initial appearance on or about Monday, October 7, 2013, before Magistrate Judge Suzanne Segal. SA Berrios was present during the hearing. SA Berrios and I have also reviewed a transcript of the hearing. During the hearing, Assistant U.S. Attorney Ruth Pinkel told the Court that "[t]here are separate allegations apart from this indictment that the defendant engaged in investment fraud of anywhere between 3- and $20 million" and asked the Court to impose a condition of release on Jones that prohibited Jones from soliciting funds from investors. Magistrate Judge Segal told Jones not to solicit funds from any investors and further explained that failing to obey any of the conditions of release, including the general conditions, may result in the forfeiture of the bond and a warrant to be issued for Jones's arrest. Jones responded in the affirmative when asked whether she understood the consequences that may result if she was to violate any of the terms or conditions of her release.

## VIII.     CONCLUSION

39.     Based on the facts set forth herein, as well as on my training, experience, and knowledge of this investigation, and information relayed to me by Special Agents with IRS-CI and USSS, I believe that there is probable cause to believe that Carolyn Jones has engaged in wire fraud in violation of 18 U.S.C. § 1343.

/S/
_____
Robert Haack, Special Agent
Internal Revenue Service,
Criminal Investigation

Subscribed to and sworn before me
this 30 day of June, 2014.

_____
HONORABLE SUZANNE SEGAL
UNITED STATES MAGISTRATE JUDGE