EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Chief, General Crimes Section
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6077/4443
     Facsimile: (213) 894-0141
     E-mail:   ruth.pinkel@usdoj.gov/
               lindsey.dotson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Nos. CR 13-698-MWF |
| --- | --- |
| Plaintiff, | CR 14-400-MWF |
| v. | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT CAROLYN MARIE JONES |
| CAROLYN MARIE JONES, | |
| Defendant. | Hearing Date: December 7, 2015 |
| | Hearing Time: 2:00 p.m. |
| | Location:    Courtroom of the Hon. Michael W. Fitzgerald |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ruth C. Pinkel and Lindsey Greer Dotson, hereby files its sentencing position regarding defendant Carolyn Marie Jones.

///

///

///

The government's sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the United States Probation Office's presentence report and recommendation letter, and such further evidence and argument as the Court may wish to consider at the time of sentencing.

Dated: November 24, 2015        Respectfully submitted,

                                        EILEEN M. DECKER
                                      United States Attorney

                                      LAWRENCE S. MIDDLETON
                                      Assistant United States Attorney
                                      Chief, Criminal Division

                                        */s/ Ruth C. Pinkel*
                                      RUTH C. PINKEL
                                      LINDSEY GREER DOTSON
                                      Assistant United States Attorneys

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Carolyn Marie Jones ("defendant") executed not one, but two, fraud schemes of epic proportions resulting in a loss to Union Bank and numerous investors of $15,124,100.  For her scheme that defrauded Union Bank of California ("Union Bank") out of $15 million, defendant was charged in a 19-count indictment on September 25, 2013 in United States v. Carolyn Marie Jones, CR 13-698-MWF, with violations of 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1014 (Making a False Statement on a Loan Application), 18 U.S.C. § 152(1) (Concealment of Assets in Bankruptcy), and 18 U.S.C. § 1028A (Aggravated Identity Theft).  (CR 13-698-MWF Dkt. 1.)

While on pretrial release, defendant executed an entirely separate investment fraud scheme, resulting in an additional loss of $124,100 to numerous victims.  For this second scheme, on July 11, 2014, defendant was charged in a seven-count indictment in United States v. Carolyn Marie Jones, CR 14-400-MWF, with violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 401(3) (Contempt), and 18 U.S.C. § 3147 (Committing an Offense While on Pretrial Release).  (CR 14-400-MWF Dkt. 10.)

On February 25, 2015, pursuant to a plea agreement to resolve both cases, defendant pled guilty to Count Five (Bank Fraud) and Count Seventeen (Concealment of Assets in Bankruptcy) as charged in Case Number CR 13-698-MWF.  (CR 13-698-MWF Dkt. 101; CR 14-400-MWF Dkt. 37.)  In her plea agreement, defendant admitted to both fraud schemes and acknowledged that her conduct resulted in a devastating loss of $15,124,100.  (CR 13-698-MWF Dkt. 99.)

On June 9, 2015, the United States Probation Office ("USPO") filed its recommendation letter and presentence report ("PSR"). (CR 13-698-MWF Dkts. 103, 104.) The government concurs with the USPO's Sentencing Guidelines calculations and recommends a low-end term of 78 months' imprisonment, five years' supervised release, $15,124,100 in restitution, and a special assessment of $200. (Id.)

**II.  STATEMENT OF FACTS**

Pursuant to the plea agreement, defendant admitted to the following facts when she pled guilty. (CR 13-698-MWF Dkt. 99.)

**A.  Factual Basis for CR 13-698-MWF**

Defendant Carolyn Jones was the President and founder of a high-end denim jean and clothing company named DDI, which was located in the Central District of California. Defendant's jeans were marketed under the dba/labels of PRVCY Premium and Privacy Wear.

1.  $15 Million Business Line of Credit

In November 2008, defendant applied for and obtained on behalf of DDI a business line of credit from Union Bank in the amount of $8.5 million, which line of credit was eventually increased to $15 million. At all relevant times, Union Bank was insured by the Federal Deposit Insurance Corporation.

When defendant applied for the line of credit, she used the Social Security Number ("SSN") for M.B. and placed or caused to be placed M.B.'s SSN on documents submitted to Union Bank, including on defendant's personal financial statements and on Form 1040 U.S. individual tax returns purportedly belonging to defendant. Defendant knew that M.B. was a real person.

In connection with her application for the line of credit, on or about November 10, 2008, defendant submitted and willfully caused

2

to be submitted to Union Bank false individual federal tax returns, Forms 1040, for 2005, 2006 and 2007, which were not filed with the IRS and contained information not submitted to the IRS.

On or about November 10, 2008, defendant submitted and willfully caused to be submitted to Union Bank financial statements for DDI, for year ending December 31, 2007, which purported to have been audited by "Sterling Business Advisors, LLC."  In truth, as defendant knew, the financial statements contained false information and were not audited by Sterling Business Advisors, LLC.  Defendant knew that Sterling Business Advisors was a sham company that did not engage in legitimate auditing services.  Defendant knew that the Sterling Business Advisors' letterhead, the contents of the letter accompanying the audit, the phone number for an alleged partner at Sterling Business Advisors, which she provided to Union Bank, and the fact of "Sterling Business Advisors" had been fabricated.  Moreover, defendant knew that the figure of $44.9 million in "Gross Profit" for 2007 listed on the Income Statement, among other false figures, was grossly inflated in that DDI's gross profit was not even close to that figure.

Defendant admits that she made many false and fraudulent statements to Union Bank employees, most notably loan officer K.B. Defendant admits that she submitted false accounts receivable aging reports for DDI, which grossly inflated DDI sales/accounts receivable and falsely listed certain retail stores as being DDI customers when they were not.  Defendant admits she lied to K.B. about the sales of DDI.

Defendant submitted the above-described false information to Union Bank for purposes of influencing the actions of Union Bank and

to cause Union Bank to issue $15 million in loans. As a result of defendant's scheme to defraud, Union Bank lost $15 million.

2. Concealment of Assets in Bankruptcy

After DDI defaulted on the $15 million line of credit from Union Bank, Union Bank filed a civil suit against DDI in Los Angeles County Superior Court. In or about February 2010, Union Bank obtained a court order authorizing Union Bank to seize the collateral of DDI. On or about February 12, 2010, agents of Union Bank appeared at the DDI warehouse to seize the collateral securing the line of credit.

After Union Bank agents appeared at the DDI warehouse, defendant caused DDI to file a Chapter 11 bankruptcy in the Central District of California on or about February 12, 2010, in the case entitled <u>In Re Diamond Decisions, Inc.</u> 2:10-BK-15109-RN. Union Bank, with the $15 million debt owed to it, was listed as the sole creditor on the bankruptcy petition.

Between February 2010 and at least in or about June 2010, defendant knowingly and fraudulently concealed, and willfully caused to be concealed, from the Bankruptcy Court, the bankruptcy trustee, and creditors of the DDI bankruptcy case, property belonging to the bankruptcy estate of DDI, namely, funds totaling approximately $120,000. More specifically, defendant falsely told the bankruptcy trustee that DDI had only one open business bank account, which was located at Wells Fargo Bank. Defendant also engaged in the following acts:

a. Causing a check from Marshall's/TJ Maxx in the amount of approximately $101,000 to be deposited into a DDI account at Altura Federal Credit Union;

4

     b.   Causing a check from Dillard's Inc. in the amount of $9,149.40, and other vendor checks payable to DDI, to be deposited into a DDI account at Altura Federal Credit Union;

     c.   Causing a payment from the DDI account at Altura Federal Credit Union in the form of a $30,000 cashier's check payable to "Carolyn Jones;"

     d.   Causing a payment from the DDI account at Altura Federal Credit Union in the form of a $30,000 check to a law firm; and

     e.   Causing payments of over $15,000 from the DDI account at Altura Federal Credit Union to DDI employees.

     3.   <u>Apology to M.B.</u>

In addition, defendant apologizes to M.B. for the pain and suffering caused by defendant's unauthorized use of M.B.'s last name and SSN over the course of a number of years.

**B.   Admissions Relating to CR 14-400-MWF**

As a result of defendant's scheme, as charged in Case Number CR 14-400-MWF, defendant admits individuals lost approximately $124,100.

**III. SENTENCING GUIDELINE CALCULATIONS**

The government concurs with the USPO's Sentencing Guidelines calculations. Pursuant to the plea agreement, defendant's total applicable offense level is 28:

| | | |
|---|---|---|
| Base Offense Level | 7 | [U.S.S.G. § 2B1.1(a)] |
| Specific Offense Characteristics | | |
|   Loss $7 to $20 million | +20 | [U.S.S.G. § 2B1.1(b)(1)(K)] |
|   Sophisticated means | +2 | [U.S.S.G. § 2B1.1(b)(10)] |
|   More than $1 million obtained from a financial institution | +2 | [U.S.S.G. § 2B1.1(b)(16)] |

5

```
Acceptance
of Responsibility         :     -3  [U.S.S.G. § 3E1.1(a)]

Total Offense Level       :     28
```

(PSR, ¶¶ 39-50.)

The government concurs with the defense that defendant falls within criminal history category I. As noted in the PSR, defendant's criminal history includes a 2002 conviction for Grand Theft. (PSR, ¶ 55.) In that case, while defendant was an employee at Lantronix, her former employer, she ordered over 70 laptop computers, valued at $207,079.24. (Id.; CR 14-400-MWF Dkt. 1, ¶ 37.) When confronted about the purchases, defendant made false statements about a Lantronix customer supposedly ordering the computers. (Id.) In reality, there was no such order. Defendant stole each of those laptops and lied during the investigation. (Id.) For this, defendant was sentenced to 365 days' jail (home arrest) and three years' probation. (Id.) As a result, defendant has a criminal history score of one and falls within criminal history category I.

Accordingly, based on a total offense level of 28 and the fact that defendant falls within criminal history category I, the appropriate Sentencing Guidelines range is 78 to 97 months' imprisonment. The USPO is correct that the statutory maximum period of supervised release is five years for Count Five (Bank Fraud). 18 U.S.C. § 3583(b)(1).

**IV. ANALYSIS OF THE SECTION 3553(a) FACTORS**

The government concurs with the USPO and respectfully requests that the Court impose the following: a term of 78 months' imprisonment, followed by five years' supervised release, $15,124,100 in restitution, and a special assessment of $200. For the reasons

6

set forth below, this recommended sentence is appropriate within the meaning of 18 U.S.C. § 3553(a) and would be "sufficient, but not greater than necessary," to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2).  18 U.S.C. § 3553.

### A.  Section 3553(a)(1)

Under 18 U.S.C. § 3553(a)(1), the Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant."  In this regard, the government's recommendation is proper.

#### 1.  The Nature and Circumstances of the Offenses

With respect to the nature and circumstances of defendant's offenses, they are no doubt egregious.  Defendant's scheme was sophisticated, devious, spanned many years, and exacted irreparable financial and personal harm.  Defendant's actions, driven entirely by greed, resulted in a loss to Union Bank and other individual victims of <u>over $15 million</u>.

For years, defendant knowingly submitted false and fabricated tax returns, income statements, accounts receivable reports, and other financial documents to Union Bank.  She lied to numerous bank employees about her company's success and sales, among other things.  She fabricated fake customers and retail stores purportedly buying her products.  She used another woman's personal information, including that woman's SSN, for years in order to obtain the line of credit from the bank.  Defendant even created a sham accounting company, "Sterling Business Advisors, LLC," which she led the bank to believe had audited her financial statements.  In fact, her lies went so far as to include fake letterhead, fake letters, and a fake phone number for a fictitious partner at this sham company.  Ultimately,

defendant did all of this, and more, solely for personal gain and material wealth at the expense of numerous victims.

Defendant's misdeeds, however, did not stop with the fraud on Union Bank to secure the multi-million dollar line of credit. When defendant's company finally defaulted on the $15 million loan, Union Bank obtained a court order authorizing the bank to seize the company's collateral. (PSR, ¶ 25.) Once agents appeared at the company's warehouse to collect that inventory, defendant immediately filed a Chapter 11 bankruptcy with Union Bank listed as the sole creditor. (Id. at ¶ 26.) While in bankruptcy, defendant repeatedly, knowingly, and fraudulently concealed assets to avoid repayment to Union Bank. (Id. at ¶ 26.) She lied, hid assets, diverted funds away from the bankruptcy estate, and then wrote personal checks to herself and others using funds owed to the estate.

And if all that was not enough, defendant's scheming continued even following indictment. While on pretrial release, defendant orchestrated yet another fraudulent scheme, resulting in yet another loss. This time, six individual victims lost $124,100. For this, defendant was indicted in a second case before this Court for Wire Fraud, Contempt, and Committing an Offense While on Pretrial Release.

### 2. Defendant's History and Characteristics

For as egregious as defendant's conduct was here, defendant's history and characteristics make it even worse. As stated, defendant was convicted in 2002 for stealing, and then lying about stealing, over 70 computers valued at $207,079.24 from her employer. (PSR, ¶ 55.) As such, it is apparent that defendant's conduct in the cases now before this Court was far from aberrational. Her history shows a pattern of theft and deceit, motivated by greed and personal gain.

8

Moreover, according to the PSR and defendant's own statements to the USPO, defendant enjoyed a healthy childhood with an intact family and has no substance abuse or other significant issues. (PSR, ¶¶ 61-74.)  The PSR makes no mention of any psychological or other issues. It was not until after the PSR was filed and the USPO recommended a Guidelines sentence, that defendant sought the medical evaluation referenced in her sentencing position.  And it was not until November 17, 2015, when defendant filed her sentencing position, that the government first learned of the alleged events in defendant's childhood -- events which cannot possibly be verified and are based solely on the accounts of a woman who, for years, defrauded and deceived nearly everyone around her.  Indeed, her alleged need to be well-liked lacks credibility in the face of her repeated lies to people, including bankers, employees, and investors.

Ultimately, while the allegations regarding traumatic events in her childhood are indeed tragic, if true, they in no way excuse her conduct or warrant a variance.  It is rare for any defendant to come before this Court without some sort of past trauma.  What may have happened to defendant over 40 years ago in no way excuses her greed, egregious fraud, and repeated criminal behavior, which included repeatedly lying to people.  Accordingly, a sentence of 78 months' imprisonment adequately reflects the nature and circumstances of defendant's offenses, as well as defendant's history and characteristics.  Anything less would be wholly inadequate.

**B.   Section 3553(a)(2)**

Pursuant to 18 U.S.C. § 3553(a)(2), the Court shall consider the need for the sentence imposed in order to reflect the seriousness of the offenses, promote respect for the law, provide just punishment,

afford adequate deterrence, and protect the public from defendant's further crimes. For the reasons previously stated, 78 months' imprisonment will achieve these goals and provide just punishment for defendant's conduct that has gravely affected so many. A lengthy term of imprisonment and five-year period of supervised release is necessary to afford deterrence and protection, as well. Given defendant's criminal history and fraud while on pretrial release, the government agrees with the USPO's assessment that "the maximum term of supervised release is necessary based upon [defendant's] high risk of recidivism." (Sentencing Rec. Ltr. at 5.)

### C. Section 3553(a)(4)

In addition, per 18 U.S.C. § 3553(a)(4), the Court shall consider the applicable Sentencing Guidelines range. The recommended sentence of 78 months' imprisonments falls within the Sentencing Guidelines range of 78 to 97 months. (PSR at 3.)

### D. Section 3553(a)(7)

Finally, 18 U.S.C. § 3553(a)(7) provides that the Court shall consider restitution. Here, pursuant to the terms of the plea agreement, defendant owes $15,124,100 in restitution to the victims of her fraud schemes. (CR 13-698-MWF Dkt. 99, ¶ 14.) Defendant should be held accountable for this loss.

## V. CONCLUSION

For the foregoing reasons, the Section 3553(a) factors warrant a sentence of 78 months' imprisonment, five years' supervised release, $15,124,100 in restitution, and a $200 special assessment.