NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6077/4443
     Facsimile: (213) 894-7631
     E-mail:    ruth.pinkel@usdoj.gov
                lindsey.dotson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 13-698-MWF |
| --- | --- |
| Plaintiff, | CR 14-400-MWF |
| v. | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT'S VIOLATIONS OF SUPERVISED RELEASE; DECLARATION OF SPECIAL AGENT RYAN ASATO |
| CAROLYN MARIE JONES, | |
| Defendant. | Hearing Date: September 21, 2020<br>Hearing Time: 2:00 p.m.<br>Location: Courtroom of the Hon. Michael W. Fitzgerald |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ruth C. Pinkel and Lindsey Greer Dotson, hereby files the government's sentencing position regarding defendant's violations of supervised release.

The government's position is based upon the following: the petition on probation and supervised release; the violation report;

the attached memorandum of points and authorities; the declaration of Ryan Asato, Special Agent, Internal Revenue Service, Criminal Investigation; the files and records in case numbers 13-CR-698-MWF and 14-CR-400-MWF; and such further evidence and argument as the Court may permit.

Dated: September 7, 2020        Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

         /s/ Lindsey Greer Dotson
RUTH C. PINKEL
LINDSEY GREER DOTSON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

While still in BOP custody and immediately upon entering supervised release, defendant CAROLYN MARIE JONES perpetrated the very same denim jeans fraud scam that led to her original convictions, including for a $15 million bank fraud scheme. Undeterred by two federal indictments and a 79-month prison sentence, defendant recently obtained a $13,000 investment from an unsuspecting investor (Victim A).  Through a myriad of lies, false pretenses, and material omissions, defendant fraudulently obtained the investment by, once again, purporting to be a successful and well-connected denim jeans entrepreneur.  She lied to Victim A about her purported denim jeans business, retail connections, celebrity endorsements, how the funds would be used, and her criminal history.  In doing so, she violated California Penal Code § 484 (Theft by Fraud, Deceit, or Trick) and the term of her supervised release to not commit other crimes.  She also violated three additional terms of her supervised release by engaging in a business involving the solicitation of funds without the express prior approval of her probation officer, failing to disclose an open line of credit, and failing to disclose an open bank account.

Defense counsel has informed the Court that defendant intends to admit all four violations and wishes to proceed immediately to sentencing.  Accordingly, the government hereby files its sentencing position.  Pursuant to 18 U.S.C. § 3583(e), the government seeks revocation of supervised release and a 24-month period of imprisonment, followed by 36 months of supervised release.

This sentence is warranted given the egregious breach of the Court's trust.  It is also imperative for deterrence and to protect the public.  As her criminal history and latest fraud scheme make clear, defendant is no ordinary individual before the Court on a supervised release petition.  She is a savvy fraudster with a shrewd ability to defraud both sophisticated banks and individual investors alike.  And nothing -- not a 19-count indictment for a massive bank fraud scheme, a second seven-count indictment for an investment fraud scheme while on pretrial release, a lengthy custodial sentence, nor a prior conviction for Grand Theft even before the federal charges here -- has yet to deter defendant's devastating fraud and theft.  A 24-month sentence is therefore necessary to deter defendant and protect the community.

**II.   BACKGROUND**[1]

In 2008, defendant defrauded Union Bank of California out of $15 million by falsely portraying herself as a successful and well-connected denim jeans entrepreneur grossing $100 million annually in sales and backed by scores of high-end retailers and celebrity endorsements.  It was all a sham.  She had used another woman's real Social Security number to secure multi-million-dollar lines of credit from the bank, created fake financial and tax records, fabricated an auditing firm to make it appear as though her books had been

---

[1] Unless indicated otherwise, the facts detailed herein are based upon defendant's plea agreement (13-CR-698-MWF dkt. 99), the presentence report (13-CR-698-MWF dkt. 104), and the Declaration of Special Agent Ryan Asato, Internal Revenue Service, Criminal Investigation ("Asato Declaration").  The Asato Declaration details two of the four violations of defendant's supervised release -- defendant violating California Penal Code § 484 (Theft by Fraud, Deceit, or Trick) and engaging in a business involving the solicitation of funds without prior express authorization of her probation officer.

reviewed, and lied about her business deals and endorsements. Later, once her bank fraud scam came to light, and Union Bank obtained a court order to seize the collateral securing the loan, defendant committed yet another fraud by filing for bankruptcy, lying to the bankruptcy trustee, and concealing assets in bankruptcy. For those crimes, defendant was charged in a 19-count indictment on September 25, 2013 in United States v. Carolyn Marie Jones, case no. 13-CR-698-MWF, with violations of 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1014 (Making a False Statement on a Loan Application), 18 U.S.C. § 152(1) (Concealment of Assets in Bankruptcy), and 18 U.S.C. § 1028A (Aggravated Identity Theft). (13-CR-698-MWF Dkt. 1.)

At defendant's initial appearance in 2013, the government alerted the Court to an entirely separate scheme in which "defendant engaged in investment fraud of anywhere between 3- and $20 million." (13-CR-698-MWF Dkt. 43 at 12, 16.) The government requested and received a special condition of release prohibiting defendant from soliciting funds from investors. Defendant then violated that condition while on pretrial release by executing yet another investment fraud scheme, again using the denim jeans ruse. (CR 14-400-MWF Dkts. 1, 10.) This scheme resulted in an additional loss of $124,100 to multiple victims. (Id.) As a result, defendant was charged in a seven-count indictment on July 11, 2014 in United States v. Carolyn Marie Jones, case no. 14-CR-400-MWF, with violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 401(3) (Contempt), and 18 U.S.C. § 3147 (Committing an Offense While on Pretrial Release). (CR 14-400-MWF Dkt. 10.)

Pursuant to a plea agreement to resolve both cases, defendant pleaded guilty to Count Five (Bank Fraud) and Count Seventeen

(Concealment of Assets in Bankruptcy) in case no. 13-CR-698-MWF. (13-CR-698-MWF Dkt. 101; 14-CR-400-MWF Dkt. 37.)  In her plea agreement, defendant admitted the Union Bank fraud scheme as well as the investment fraud scheme while on pretrial release.  (13-CR-698-MWF Dkt. 99.)  She acknowledged that her conduct from both schemes resulted in a total loss of $15,124,100.  (Id.)  The Court sentenced defendant to 79 months in prison, followed by five years of supervised release.  (13-CR-698-MWF Dkt. 121.)

**III. ARGUMENT**

Despite two indictments and a 79-month custodial sentence, defendant began employing her old denim jeans fraud scam in December 2019 while still in custody at the Marvin Gardens Residential Reentry Center.  She then continued her fraud scheme while on supervised release.  With little regard for the financial well-being of anyone other than herself, defendant preyed upon Victim A, lying to him at nearly every turn and convincing him to withdraw thousands from his retirement savings account.

As the Asato Declaration details, defendant secured a $13,000 investment from Victim A by purporting to be a successful and well-connected denim jeans entrepreneur with high-end retail deals in the works and numerous celebrity endorsements.  She lied about nearly everything -- her business, retail connections, celebrity endorsements, how the funds would be used, and her criminal history. She falsely claimed that numerous celebrities supported her denim brand, including the Kardashian and Jenner families, Taylor Swift, Floyd Mayweather, Chrissy Teigen, Will Smith, and Jada Pinkett Smith. She even claimed that LeBron James had offered her $500,000 for equity in her company.

Among the most egregious of her lies were her claims about Kobe Bryant. In the wake of the helicopter crash that killed Bryant and one of his daughters, defendant used their deaths as a way to prop up her company and bolster her carefully-crafted image of being a well-connected entrepreneur. Immediately after the crash, defendant told Victim A that she was in contact with the Bryant family and consoling them. She claimed they had been close family friends for years. In an attempt to secure funding from Victim A, she even said that Bryant had wanted his daughters to be the "face" of defendant's denim brand. She told Victim A: "Yes we've got work to do for sure!!! Time to get focused just as Kobe taught so well..."

Apart from all of her false statements documented in text messages, emails, and recorded conversations, defendant also concealed material facts from Victim A. For instance, she never disclosed that she was actually a federal inmate, living in BOP custody, at the time she first solicited an investment from Victim A and purported to be a well-connected entrepreneur regularly hobnobbing with celebrities. She also concealed the material fact that she was on supervised release during her negotiations with Victim A. And not once did she ever disclose her criminal convictions or prior fraud schemes, all of which involved the very same denim jeans ruse she was using to solicit money from Victim A.

Based on defendant's material false statements and omissions, Victim A withdrew $13,000 from his 401(k) retirement savings account to invest in defendant's company and has yet to be repaid, despite a March 20, 2020 deadline for full repayment. As detailed by defendant's text messages and recordings of conversations with Victim A, defendant continued to lie to Victim A while she was on supervised

release, all in an effort to further her fraud scheme, keep Victim A's money indefinitely, and ward off suspicion by Victim A.

Ultimately, as her latest fraud scheme makes clear, defendant remains a serious economic threat to the community. Her supervised release violations, coupled with her criminal history, demonstrate a stunning degree of recidivism and greed. The fact that defendant has now committed fraud while on pretrial release, in BOP custody, and on supervised release shows her utter disregard for the orders of the Court. She has an alarming ability to defraud both sophisticated banks and individual investors alike and will not stop victimizing the public unless this Court intervenes. Her brazen breach of the Court's trust, no doubt, will happen again if the severity of her conduct is not made clear to her. Accordingly, an above-Guidelines, 24-month custodial sentence is imperative to protect the community and deter defendant's future criminal conduct.

**IV. CONCLUSION**

For the foregoing reasons, and based upon the evidence detailed in the Asato Declaration, the government respectfully requests that this Court revoke defendant's supervised release. The government seeks a 24-month period of imprisonment, followed by three years of supervised release. Such a sentence is sufficient, but not greater than necessary, to protect the community, deter defendant's future criminal conduct, and remedy defendant's egregious breach of the Court's trust.