Ian Wallach (SB237849)
Law Office of Ian Wallach, PC
11400 West Olympic Blvd., Ste. 1500
Los Angeles, CA 90064
T: 213.375.0000; F: 213.402.5516
E: iwallach@wallachlegal.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case Nos.: CR 13-698-MWF & CR 14-400-MWF |
|---|---|
| Plaintiff, | |
| vs. | DEFENDANT CAROLYN JONES' POSITION PAPER RE: VIOLATION OF SUPERVISED RELEASE |
| CAROLYN JONES, | |
| Defendant | |

I.    INTRODUCTION

On December 7, 2015, Defendant Carolyn Jones ("Ms. Jones") was sentenced to one count of Bank Fraud and one count of Concealment of Assets in Bankruptcy.  The convictions arose out of a fraud against a bank and a subsequent fraud against investors (the latter occurring while Ms. Jones was on Pre-Trial Release).  Ms. Jones is again accused of engaging in fraud (and other misconduct) while on Supervised Release.

The amount of loss at issue is eight thousand dollars ($8,000).[1]  Ms. Jones allegedly used Craigslist to locate and target potential investors -- promoting purported opportunities with an apparel company -- and succeeded in having one victim provide thirteen thousand dollars ($13,000).   Ms. Jones was able to repay five thousand dollars ($5,000).

The grounds for her alleged violations are Fraud, as well as the failure to report an open credit line; the failure to report an open bank account; and participating in a business involving the solicitation of funds.

Initially, the Department of Probation's recommended sentence was eight (8) months of incarceration followed by forty-eight (48) months of supervision as to the Fraud Count, and twenty-four  (24) months of supervision as to the Concealment count.

II.    Evaluation

The Court graciously granted a series of extensions for a potential expert report related to this matter, and Dr. Karim, Ph.D. was finally able to evaluate Ms. Jones on September 3, 2020.  Dr. Karim was able to sufficiently identify the disorders afflicting Ms. Jones.  Dr. Karim's report is attached to the Declaration of Ian Wallach (Wallach Decl.) at 2, Ex. A).

---

[1] Ms. Jones originally obtained thirteen thousand dollars ($13,000) of which Five Thousand Dollars ($5,000) was subsequently repaid.

DEFENDANT CAROLYN JONES' POSITION PAPER RE: VIOLATION OF SUPERVISED RELEASE
2

Dr. Karim was asked to evaluate Ms. Jones to determine the following three issues:

1. Does Ms. Jones present with an identifiable mental health disorder (or disorders) as defined in the Diagnostic Statistical Manual, Fifth Edition (DSM-V)?;

2. Did any mental health disorder(s) contribute to the instant offense conduct by Ms. Jones?; and

3. Can Ms. Jones' mental health disorder(s) [if any] be treated?

While the full report of Dr. Karim is annexed, Dr. Karim's conclusions are as follows[2]:

## CLINICAL OPINION

1) Based on Ms. Jones' history and my clinical observations, I would opine that she presents with the following DSM V mental health disorders:

1) **Major Depressive Disorder (severe);**
2) **Posttraumatic Stress Disorder (PTSD); and**
3) **Generalized Anxiety Disorder**.

In reviewing her history, I would opine that Ms. Jones' depression, her traumatic stress, and her generalized anxiety all stem from her traumatic childhood. More specifically, she reported being sexually abused by her paternal uncle over a two-year period (beginning at age eleven). These continuous traumatic events resulted in significant psychological deterioration for Ms. Jones as a young child

---

[2] Karim, Nadim, Ph.D, Psychological Evaluation Of Carolyn Marie Jones, pp. 5-6 (September 7, 2020), Wallach Decl., ¶ 2, Exh. A.

and later as an adolescent. She did not receive any therapy or counseling for the abuse because she remained in fear due to her paternal uncle's threats towards her family. These threats further traumatized her as she grew older, and she kept the abuse a secret until she was an adult (years later).

I would further opine that the psychological effects of the sexual abuse that Ms. Jones' experienced left significant traumatic scars on her ability to be intimate with the opposite sex. She described how the cumulative effects of trying to cope with the sexual trauma on a daily basis as an adult eventually led to difficulty with intimacy, which later resulted in the breakdown and subsequent end of her marriage. Moreover, she continued to live her adult life without the benefit of any mental health treatment (including any counseling or therapy). This was most likely due to her feelings of shame, elements of denial, and embarrassment over her traumatic history. As she stated herself during the clinical interview with myself: "I've only had sex with my husband and my uncle."

2) **In my opinion, the specific symptoms of Ms. Jones' depression and PTSD significantly contributed to the commission of the instant offense (as well as her criminal history in general).** More specifically, I would opine that she felt like she needed to create a more socially palatable persona as a fashion designer and a successful entrepreneur rather than continuously accepting the stark reality of someone who felt "dirty, belittled or like a misfit". In my opinion, the resulting feelings of shame and embarrassment resulted in grandiose overcompensation, whereby this new successful persona created by Ms. Jones could be used as an escape from painful reality that she was continuously masking on a daily basis.

In my opinion, the sexual harassment that Ms. Jones experienced following her incarceration in Victorville prison further exacerbated her underlying PTSD and generalized anxiety. Essentially, this traumatic incident re-traumatized her and left her with yet another emotional scar from which she has yet to recover.

DEFENDANT CAROLYN JONES' POSITION PAPER RE: VIOLATION OF SUPERVISED RELEASE
4

1
2
3
4

In my opinion, therefore, I would opine that Ms. Jones has never received the mental health treatment that she has required throughout the course of her life. Instead, she created this false persona of a successful businessperson and entrepreneur in order to escape from the reality of her truly depressed self.

5
6
7
8
9

At present, I would opine that Ms. Jones accepts the reality of her legal situation. She also presents with insight into her unresolved mental health needs. In addition, I would opine that she fully understands how these untreated mental health needs resulted in her becoming involved in a series of fraudulent crimes (after not having had any criminal contact for approximately ten years).

10
11
12
13
14
15
16
17
18
19

3) **Given her current level of insight, I would opine that Ms. Jones' mental health disorders can be treated.** More specifically, I would opine that she would benefit from individual therapy (most likely cognitive behavioral therapy) in order to address her major depression, PTSD, and generalized anxiety. The goal(s) of any future treatment plan, in my opinion, should be as follows: 1) Provide Ms. Jones with an outlet to process her symptoms in a safe and clinically structured environment; 2) Facilitate insight in relation to the nexus between Ms. Jones' unresolved mental health issues and the instant offense conduct; and 3) Refer Ms. Jones to a clinical psychiatrist that can address the need for antidepressants or anti-anxiety medication(s) in order to ameliorate her symptoms; and 4) Have Ms. Jones participate in a victim support group for survivors of sexual assault.

20
21
22
23
24
25
26
27

I would suggest LACADA as a suitable option for treatment for Ms. Jones. More specifically, I am familiar with LACADA given my nearly 15 years of experience as a licensed clinical psychologist in Los Angeles (conducting both Federal and State evaluations). I therefore believe that LACADA can provide Ms. Jones with the structured residential mental health treatment (and follow-up outpatient care) that she has lacked throughout the course of her life. Moreover, I would conclude that this type of structured treatment approach would be the most effective way to reduce (if not eliminate) any future risk of recidivism.

28

DEFENDANT CAROLYN JONES' POSITION PAPER RE: VIOLATION OF SUPERVISED RELEASE
5

III.     ARGUMENT

a. Range of Incarceration

The Policy Statements for a violation of supervised release are found at USSG §§ 7B1.1 – 5.

The grade of the violation is to be based on the defendant's actual conduct, rather than the conduct that is the subject of the criminal charges of which the defendant was convicted.[3]

The primary offense was the commission of a new act of Fraud -- a Grade B violation.[4]  At the time of sentencing on the original conduct, Ms. Jones had a criminal history category of 0, which is controlling.[5]

Accordingly, the range of imprisonment, per the Revocation Table, is between four and ten months.[6]  However, Ms. Jones acknowledges that "[t]he Chapter 7 policy statements are 'mandatory' only to the extent that the district court must consider them in calculating a sentence upon revocation of supervised release; the district court, however, is not bound by the ranges stated in Chapter 7."[7]

Ms. Jones was arrested on May 11, 2020 and has remained in custody. Pursuant to 18 USC § 3585(b) she will receive credit for the time spent in official detention resulting from the supervised release revocation.  Ms. Jones will not

---

[3] U.S.S.G. (Chap. 7, Part B, Appl. Note 1) (2018)
[4] *Id*. at(§7B1.1(2)) (2018)
[5] *Id*. at (§7B1.4) (2018)
[6] *Id. at* (§7B1.4(a)) (2018)
[7] *United States v. George*, 184 F.3d 1119, 1122 (9th Cir. 1999)

receive credit toward a sentence of imprisonment for the time she served on supervised release.[8]

The sentencing range for Ms. Jones' original sentence was seventy-eight (78) to ninety-seven (97) months, of which she was sentenced to seventy-nine (79) months.  Accordingly, any sentence in excess of eighteen (18) months would result in an upward departure exceeding the top of the guideline range available during her initial sentence.

> b.   The Department Of Probation's Recommended Sentence Of Eight Months, Followed By An Extended Period Of Supervised Release, Is Sufficient To Address Ms. Jones' Conduct

Since her incarceration in May, Ms. Jones has engaged in a great deal of introspection.  Ms. Jones is committed to self-betterment and has already begun the process of self-examination to both understand and overcome her compulsive behavior.   She has participated in several self-betterment programs since she has been incarcerated at the Metropolitan Detention Center, and has earned the following certificates (Wallach Decl. at 3,  Ex. B):

1.  Self-Study Module: Personal Growth, Re-Entry;

2.  Self-Study Module: Personal Growth, Forgiveness and Guilt;

3.  Re-Entry Self-Study: Culture Shock;

4.   Re-Entry Self-Study: Dealing With Rejection; and

5.  Re-Entry Self-Study: Handling Frustration

---

[8] U.S.S.G. (§7B1.5) (2018)

DEFENDANT CAROLYN JONES' POSITION PAPER RE: VIOLATION OF SUPERVISED RELEASE

Ms. Jones has earned additional certificates since her counsel was provided those attached, and these will be available to the Court and parties at the upcoming revocation hearing.

Ms. Jones has underdone the psychological evaluation discussed above, and her disorders have been identified such that a treatment program can be implemented. This will assist in ensuring that the conduct at issue is never repeated.

Ms. Jones is committed to repaying the outstanding eight thousand dollars ($8,000) owed to the victim. When Ms. Jones is released she is willing and eager to both continue therapy and abide by any terms that the Court deems warranted. Even if Ms. Jones is subjected to additional incarceration, she is eager to spend that time continuing to study why she has acted in the ways that she has to ensure that her conduct will not be repeated.

Upon her release, Ms. Jones will not work at all in the apparel industry and is eager to take a job with less payment, but also with less access to means that allowed her to engage in her misconduct.

      c.   Incarceration For A Period Of Eight Months Is Sufficient And Not Greater Than Necessary To Satisfy The Concerns Listed In 18 U.S. Code § 3553(a)(2)

As to the nature and circumstances of the offense and the history and characteristics of the defendant, Ms. Jones recognizes that one individual was substantially harmed by her conduct, and that her conduct could be construed as an offense to the Court. However, in her prior matters, it took substantial time for Ms.

Jones to acknowledge her wrongdoing, whereas here, Ms. Jones immediately came to terms with her conduct and agreed to admit the violations.

Similarly, in this matter, Ms. Jones has undergone the psychological evaluation that serves as a roadmap to terminating the offending conduct.

Ms. Jones recognizes that there is a need for a sentence that reflects the seriousness of the offense, the need to promote respect for the law, and to provide just punishment for the offense.  Ms. Jones understands the serious nature of her conduct and that a victim was profoundly injured.  She is ashamed of her conduct and eager to make the victim whole.

Ms. Jones understands how her conduct could be construed as an offense to the Court but asks the Court to acknowledge that she did not intend to do so. Rather, she acted in a compulsive fashion which she is now working to control (and, per Dr. Karim, could be controlled provided Ms. Jones obtains the counseling that she requires).

A sentence of eight months, during a global pandemic that profoundly increases the harm that can occur in custody, is sufficient to deter criminal conduct while providing just punishment.  Moreover, a continued and extended period of Supervised Release -- coupled with the mandate that Ms. Jones undergo and maintain psychological treatment -- will be a sufficient deterrence to criminal conduct while protecting the public from further crimes.

IV.    CONCLUSION

While the harm she created can only be remedied to an extent, Ms. Jones is eager to do what she can. Ms. Jones understands that her compulsive behavior warrants incarceration.  She wants to make the victim whole.  She has engaged in self-examination and has and will continue to do so.  She has been evaluated, and

her psychological disorders have been identified such that a treatment plan may be implemented.

Considering the above, a sentence of eight months of incarceration, followed by a substantial period of Supervised Release, is sufficient.

Respectfully Submitted,

Dated: September 7, 2020              By:    _____s_____
        Los Angeles, CA                      Ian Wallach, Esq.
                                             Attorney for Defendant
                                             Carolyn Jones

DEFENDANT CAROLYN JONES' POSITION PAPER RE: VIOLATION OF SUPERVISED RELEASE
10