Ian Wallach (SB237849)
Law Office of Ian Wallach, PC
11400 West Olympic Blvd., Ste. 1500
Los Angeles, CA 90064
T: 213.375.0000; F: 213.402.5516
E: iwallach@wallachlegal.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case Nos.: CR 13-698-MWF & CR 14-400-MWF |
|---|---|
| Plaintiff, | |
| vs. | DECLARATION OF IAN WALLACH |
| CAROLYN JONES, | |
| Defendant | |

I, Ian Wallach, hereby state and swear as follows:

1. I am counsel to defendant Carolyn Jones in this action.

2. Attached as "Exhibit A" is a report by Dr. Nadim Karim, Ph.D. dated September 7, 2020.

//

//

//

DECLARATION OF IAN WALLACH
1

3. Attached collectively as "Exhibit B" are true and correct copies of five Certificates of Merit earned by Ms. Jones while in custody at the Metropolitan Detention Center.

Respectfully Submitted,

Dated: September 7, 2020　　　　　　　　　　　　　By:　＿＿＿＿＿s＿＿＿＿＿
　　　　Los Angeles, CA　　　　　　　　　　　　　　　　　　　Ian Wallach, Esq.

# EXHIBIT A

*Nadim N. Karim, Ph.D.*

*Clinical and Forensic Psychologist*
*PSY 21183*
*P.O. Box 65215*
*Los Angeles, CA 90065*
*Tel: 323.253.7860*
*Fax: 323.257.8385*
*karimpsychcorp@gmail.com*

September 7, 2020,

Ian Wallach, Attorney at Law
11400 West Olympic Boulevard, Suite 1500
Los Angeles, CA  90064
T: 213.375.0000

**PSYCHOLOGICAL EVALUATION OF CAROLYN MARIE JONES**

Mr. Wallach,

Pursuant to your referral and the CJA approval, I conducted a psychological evaluation of Ms. Jones on September 3, 2020. The evaluation was conducted via confidential tele-conferencing due to the Corona virus pandemic situation. Ms. Jones confirmed that she was in a private room in the Metropolitan Detention Center at the time of the evaluation. She voluntarily consented to participate in the evaluation.

Per the referral, I was requested to provide a clinical opinion on the following:

**1)Does Ms. Jones presents with an identifiable mental health disorder (or disorders) as defined in the Diagnostic Statistical Manual, Fifth Edition (DSM-V).**

**2)Did any mental health disorder(s) contribute to the instant offense conduct by Ms. Jones?**

**3)Can Ms. Jones' mental health disorder(s) [if any] be treated?**

**SIGNIFICANT HISTORY**

Summary of Probable Cause:

In 2008, defendant defrauded Union Bank of California ("Union Bank") out of $15 million by falsely portraying herself as a successful and well-connected denim jeans entrepreneur grossing $100 million annually in sales and backed by scores of high-end retailers and celebrity endorsements. She had used another woman's Social Security number to secure multi-million-dollar lines of credit from the bank, created fake financial

records, fabricated an auditing firm to make it appear as though her books had been audited, and lied about her business deals and endorsements. Later, once her fraud had surfaced, she committed another fraud by trying to conceal assets in bankruptcy. Following her indictment for those crimes, defendant committed a separate investment fraud scheme in 2014 while on pretrial release, which resulted in the loss of $124,100 from individual investors' savings.

Following her 79-month custodial sentence, defendant began perpetrating a similar denim jeans fraud scam while in Board of Prisons (BOP) custody and most recently on supervised release. Defendant then secured a $13,000 investment from an unsuspecting investor (V-A) by purporting (once again) to be a successful and well-connected denim jeans entrepreneur with high-end retail deals in process and numerous celebrity endorsements. To secure the investment from V-A, defendant falsified details about her denim jeans business, retail connections, celebrity endorsements, how the funds would be used, and her criminal history. She also concealed material facts, such as the fact that she was actually in BOP custody at the time she first solicited an investment from V-A and was purporting to be a well-connected entrepreneur in the denim industry. Based on defendant's material false statements and omissions, defendant withdrew $13,000 from his 401(k) retirement savings account and has yet to be repaid, despite a 3/20/2020 deadline for repayment. [Per the declaration of Ryan Asato, Special Agent IRS Criminal Investigation, (4/15/2020)]

**CLINICAL INTERVIEW**

Ms. Jones' interactional style during the present clinical interview with myself was cooperative. Her thought content was organized and her responses were rational. There was no evidence of perceptual disturbance. She did not make any statements that suggested evidence of paranoid or delusional themes. Her mood was depressed with flat affect. Her memory and cognition were intact. She denied any thoughts of self-harm.

Ms. Jones reported that she was born on March 8, 1963 in Los Angeles. She said that she was 57-years-old. When asked about her parents, she said that her mother (Jane) passed away in 2000 from breast cancer. She said that her father (Carl) passed away in 2011 from prostate cancer. When asked about siblings, she said that she had three older biological brothers. She said that they got along.

When asked about her childhood, Ms. Jones reported that she was raised by both parents in Carson. When asked about any history of abuse or neglect as a child, she reported being sexually abused by her paternal uncle. More specifically, she said:

> "I was in middle school (about eleven-years-old). He molested me over a two-year period. He forcefully raped me twice. When he would come over, he would want me to sit on his lap. He would touch me. He threatened me not to tell anyone. He said he would hurt my family if I told anyone. It stopped because I would do everything I could to stay away from him. I was in fear every time he would come around. I was very close to my mother and I didn't want anything to happen to her.

> Even as an adult, I feared that he would hurt my parents. My dad said that if anyone ever hurt me, he would hurt them really bad. I didn't want anything to happen to him so I didn't say anything…Even during the time of my mother's funeral, it gave me a terrible feeling because he was so forceful. It really ruined my life…I later told my husband (after we were married) because we started having intimacy problems because of it. I've only had sex with my husband and my uncle. It really ruined my life. My husband and I tried to work through it, but we ended up getting divorced."

Ms. Jones denied receiving any therapy or counseling following the sexual abuse that she suffered as a child. She stated that she continued to experience symptoms of depression, anxiety, and posttraumatic stress as she grew older. More specifically, she said:

> "I went through the rest of middle school, high school, and my adulthood feeling not worthy. I felt dirty. I felt belittled. I felt like a misfit. I always tried to overcompensate…I would have bad dreams about men trying to harm me or rape me. I would be running in my dream in slow motion. My uncle or a man would be chasing me, but I couldn't run fast enough. I would dream that I was stuck in a room and the doors would never open. I would run down the stairs and keep running. Sometimes it would be my uncle and other times I wouldn't know the person. I feared them. It affected all of my relationships with men."

When redirected back to her history, Ms. Jones reported that she graduated from Banning High School (Wilmington) in 1980. She then attended Marymount College (Palos Verdes) and completed general education and business courses. She graduated with her Associate of Arts degree in 1982 (majoring in business). She then attended Pepperdine University and studied computer information systems and business. She graduated with a Bachelor of Science degree in 1995. She said that it took some time for her to finish her degree because she was also working at the time.

When asked to elaborate on her employment history, Ms. Jones replied:

> "My first job was while I was still at Pepperdine. I did an internship with IBM in downtown Los Angeles. I became a full-time employee after the internship working in the systems department as an analyst (resolving software issues as a programmer). I had that job for four years. After that, I went to work for Hewlett Packard. I went from a programming supervisor to director of software development. I worked there for about eight years. Then I worked for Lantronics (a computer company bought by Hewlett Packard) as a software manager for a year. After that, I went to work for Techni-Color where I worked as a director of software development. I worked there for five years. Then, I started my own fashion company because it has always been my passion."

When asked about her significant relationships, Ms. Jones reported that she got married to her now ex-husband (David) in 1986. When asked to elaborate on her marriage, she replied:

> "We were married for sixteen years. I met David in high school. We were high school sweethearts. We had a great first part of our marriage. It took me seven years to get pregnant because of my intimacy issues. We have a daughter together (Cameron, 27-years-old)…I later realized that I was attracted to women because I could be more relaxed and intimate. I ended up having two relationships with women while I was married. Then the last relationship with a woman caused our divorce because I felt more comfortable with her…Now, I don't seek relationships with women. I just became closer to God and really prayed about it based on my spiritual beliefs. I just realized that is not God's plan for my life."

Ms. Jones denied any history of mental health treatment as an adult (other than marriage counseling with her husband). She denied any history of psychiatric hospitalization. She denied any perceptual disturbance. She denied being prescribed with psychotropic medication for any mental health-related issues. She denied any history of self-harm. She further denied any past or present suicidal ideation.

When asked, in general, about her criminal history, Ms. Jones replied:

> "I got arrested the first time around 2003. It was a State case. It was for theft of computers from Lantronics. I got house arrest for a few months. It was wrong and I take full responsibility for it. I got my second case around 2013. That was the loan that I got from Union Bank. That was the seventy-nine-month sentence. I did eighteen months at MDC and then was sent to Victorville. I was released to the half-way house in South Central Los Angeles in May of 2019. I was released from the half-way house in February of 2020.

When asked about any exposure to trauma during her time in prison, Ms. Jones replied:

> "There were a lot of fights that I saw in prison. I didn't think much of it because it was just part of the prison experience…When I was at Victorville, I had to work in the men's prison (Victorville USP; a high security compound)…During one Labor Day weekend in 2018, the officer told us to move the lunch cart to the door (in the men's unit). The officer then asked us to go inside the unit. We weren't supposed to be in there. Myself and one other female were inside a unit of one hundred males. They were making all kinds of sounds towards us. They were banging on the doors and yelling at us. It traumatized me and it brought back all of the memories of my childhood. That was a major setback. That was the worst thing I experienced other than being raped. It felt like I was in the room for over an hour, but it was probably only ten minutes. We delivered over one hundred lunches that day. I knew that I needed therapy right then, but I wasn't allowed to do it in the half-way house. After I got out, I got insurance and then Covid happened. Then I got this case."

When asked about her level of insight in relation to the most recent offense conduct, Ms. Jones replied:

> "I can't pretend to be someone that I'm not. I can pretend to lie anymore. I want to get help. I want to get counseling. I was able to seek out God to help me before and I want more help…I've already been in jail again for almost four months. My biggest regret in life is that I never slowed down to get therapy. I felt that if I got therapy, my marriage never would have ended. If I had therapy, I never would have gotten into a lesbian relationship. If I had therapy, I would never have gotten my Federal case or violated. In retrospect, when I was getting released to get out of the half-way house, I felt like I was rushing to get back to normal. I've realized that it is a marathon and not a sprint. It's not an Olympic race. I just want to live a simple life. The lies were even shocking for myself. I regret what I did and the people that I've hurt. I want to live a better life and get the help I know I need."

## **CLINICAL OPINION**

1)Based on Ms. Jones' history and my clinical observations, I would opine that she presents with the following DSM V mental health disorders: **1) Major Depressive Disorder (severe); 2) Posttraumatic Stress Disorder (PTSD); and 3) Generalized Anxiety Disorder**.

In reviewing her history, I would opine that Ms. Jones' depression, her traumatic stress, and her generalized anxiety all stem from her traumatic childhood. More specifically, she reported being sexually abused by her paternal uncle over a two-year period (beginning at age eleven). These continuous traumatic events resulted in significant psychological deterioration for Ms. Jones as a young child and later as an adolescent. She did not receive any therapy or counseling for the abuse because she remained in fear due to her paternal uncle's threats towards her family. These threats further traumatized her as she grew older, and she kept the abuse a secret until she was an adult (years later).

I would further opine that the psychological effects of the sexual abuse that Ms. Jones' experienced left significant traumatic scars on her ability to be intimate with the opposite sex. She described how the cumulative effects of trying to cope with the sexual trauma on a daily basis as an adult eventually led to difficulty with intimacy, which later resulted in the breakdown and subsequent end of her marriage. Moreover, she continued to live her adult life without the benefit of any mental health treatment (including any counseling or therapy). This was most likely due to her feelings of shame, elements of denial, and embarrassment over her traumatic history. As she stated herself during the clinical interview with myself: "I've only had sex with my husband and my uncle."

2) **In my opinion, the specific symptoms of Ms. Jones' depression and PTSD significantly contributed to the commission of the instant offense (as well as her criminal history in general).** More specifically, I would opine that she felt like she needed to create a more socially palatable persona as a fashion designer and a successful entrepreneur rather than continuously accepting the stark reality of someone who felt "dirty, belittled or like a misfit". In my opinion, the resulting feelings of shame and embarrassment resulted in grandiose overcompensation, whereby this new successful persona created by Ms. Jones could be used as an escape from painful reality that she was continuously masking on a daily basis.

In my opinion, the sexual harassment that Ms. Jones experienced following her incarceration in Victorville prison further exacerbated her underlying PTSD and generalized anxiety. Essentially, this traumatic incident re-traumatized her and left her with yet another emotional scar from which she has yet to recover.

In my opinion, therefore, I would opine that Ms. Jones has never received the mental health treatment that she has required throughout the course of her life. Instead, she created this false persona of a successful businessperson and entrepreneur in order to escape from the reality of her truly depressed self.

At present, I would opine that Ms. Jones accepts the reality of her legal situation. She also presents with insight into her unresolved mental health needs. In addition, I would opine that she fully understands how these untreated mental health needs resulted in her becoming involved in a series of fraudulent crimes (after not having had any criminal contact for approximately ten years).

3) **Given her current level of insight, I would opine that Ms. Jones' mental health disorders can be treated.** More specifically, I would opine that she would benefit from individual therapy (most likely cognitive behavioral therapy) in order to address her major depression, PTSD, and generalized anxiety. The goal(s) of any future treatment plan, in my opinion, should be as follows: 1) Provide Ms. Jones with an outlet to process her symptoms in a safe and clinically structured environment; 2) Facilitate insight in relation to the nexus between Ms. Jones' unresolved mental health issues and the instant offense conduct; and 3) Refer Ms. Jones to a clinical psychiatrist that can address the need for antidepressants or anti-anxiety medication(s) in order to ameliorate her symptoms; and 4) Have Ms. Jones participate in a victim support group for survivors of sexual assault.

I would suggest LACADA as a suitable option for treatment for Ms. Jones. More specifically, I am familiar with LACADA given my nearly 15 years of experience as a licensed clinical psychologist in Los Angeles (conducting both Federal and State evaluations). I therefore believe that LACADA can provide Ms. Jones with the structured residential mental health treatment (and follow-up outpatient care) that she has lacked throughout the course of her life. Moreover, I would conclude that this type of structured treatment approach would be the most effective way to reduce (if not eliminate) any future risk of recidivism.

Respectfully,

*Nadim N. Karim Ph.D., September 7, 2020*

Nadim N. Karim Ph.D., PSY21183

EXHIBIT B



# CERTIFICATE OF COMPLETION

This certifies that on the 29th day of May 2020

Carolyn Jones

Successfully completed the Self-Study Module: **Personal Growth, Re-Entry**

_____
Dr. S. Eiland
Psychology Treatment Programs

May 29, 2020
Date



# CERTIFICATE OF COMPLETION

This certifies that on the 11th day of June 2020

Carolyn Jones

Successfully completed the Self-Study Module: **Personal Growth, Forgiveness and Guilt**

_____
S. Eiland, Psy.D
Psychology Treatment Programs

June 11, 2020
Date

# CERTIFICATE OF COMPLETION

This certifies that on the 27th day of July 2020

Carolyn Jones

Successfully completed the Reentry Self-Study:

Culture Shock

_J. Williams Jr._
Reentry Affairs Coordinator

July 27, 2020
Date

# CERTIFICATE OF COMPLETION

This certifies that on the 27th day of July 2020

Carolyn Jones

Successfully completed the Reentry Self-Study:

Dealing with Rejection

_J. Williams Jr._
Reentry Affairs Coordinator

July 27, 2020
Date

